IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, S.I.,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION and ORDER |
| v. | | 20-cv-525-jdp |
| UNITED STATES OF AMERICA, | | |
| | Defendant. | |

---

This case arises out of a two-car accident involving Eva Spear, who had an automobile insurance policy with plaintiff American Family Mutual Insurance Company, S.I. and was employed by the United States Postal Service (USPS). American Family made payments on Spear's behalf to the driver and passenger of the other car (Bryanna Cook and Erica Dixon) for injuries they sustained, and now American Family seeks reimbursement under the Federal Tort Claims Act (FTCA). Although Spear was driving her own vehicle at the time of the accident, she was on the job for the USPS.

The government moves for summary judgment. Dkt. 15. It doesn't dispute that Spear was negligent or contend that the FTCA doesn't provide a remedy under these circumstances. In fact, the government says that it had already informed American Family before it filed this lawsuit that the government would "accept liability" for the accident. Dkt. 22, ¶ 18. But the government says that it's off the hook now because of American Family's poor legal judgment. Specifically, the government says that Spear's policy with American Family didn't provide coverage for the accident, and that an insurer who makes a payment with no legal obligation to do so has no right to subrogation.

The parties agree that Wisconsin law applies because that is where the accident occurred. *See* 28 U.S.C. § 1346(b) (liability under FTCA is determined "in accordance with the law of the place where the act or omission occurred"). Under Wisconsin law, the general rule is that "a party who pays a debt on behalf of another [may] collect from the party that owes the debt in the first place." *Loc. Gov't Prop. Ins. Fund v. Spirtas Wrecking Co.*, No. 07-C-291, 2009 WL 2392140, at *2 (E.D. Wis. July 31, 2009). This rule of equitable subrogation applies "when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." *Millers Nat'l Ins. Co. v. City of Milwaukee*, 184 Wis. 2d 155, 168–69, 516 N.W.2d 376 (1994).

The government contends that American Family was a "mere volunteer" when it made payments on Spear's behalf because it didn't have a "reasonable, good-faith belief" that its policy provided coverage for the accident. Dkt. 16, at 4. Specifically, the government says that American Family shouldn't have made any payments because Spear's policy contains an exclusion for injuries that occur while Spear is operating a vehicle as an employee of the United States and the FTCA applies.

American Family doesn't directly respond to the government's interpretation of the policy. But even if the court assumes that American Family's policy doesn't provide coverage, it doesn't follow that American Family qualifies as a "mere volunteer" under Wisconsin law.

In *State Auto Insurance Companies v. Whirlpool Corp.*, this court rejected the view that an insurer lose its right to subrogation when it pays a claim in the absence of a legal obligation to do so, and the court concluded that the plaintiff insurer was entitled to reimbursement even though it was unable to articulate a basis for coverage. 62 F. Supp. 3d 857, 863 (W.D. Wis. 2014). It was enough that the insurer had made payments "[p]ursuant to the insurance policies

[its] subsidiaries issued" and had "acted out of an interest for its own corporate family, and accepted a practical, if not legal, obligation, to make good on the debts of its subsidiaries." *Id.* at 864–65.

In reaching this conclusion, the court made two points. First, the court emphasized that the exception to subrogation for voluntary payments is narrow and "limited to those rare cases where payment is truly voluntary, or what some courts call 'intermeddling.'" *Id.* at 864 (internal quotation marks omitted). Stated another way, the party making payment is a volunteer only if "he has no right or interest of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation." *Id.* (internal quotation marks omitted).

Second, the court observed that "courts routinely refuse to apply the volunteer rule where, as here, the party making the payment is under an intangible pressure to do so." *Id.* Examples of intangible pressure include the "potential for legal liability," "the disruption of normal relations," and "the frustration of reasonable expectations." *Id.*

The court in *Local Government Property Insurance Fund* took a similar approach. 2009 WL 2392140, at *2–4. It also emphasized that voluntary payment is a rare exception to subrogation principles, noting that "almost every individual or entity that satisfies another's debt or pays for another's loss is doing so out of some kind of obligation rather than a sense of altruism." *Id.* at *2. A broad exception would be contrary to public policy because it "would give insurers no incentive whatsoever to settle their claims promptly with their insureds or with other insurers." *Id.* at *3.

As an example of a "mere volunteer," the court identified "a generous citizen [who] contributes money to a neighbor whose house is burned down by an arsonist." *Id.* But a party

3

who makes a payment "under threat of civil proceedings," "to protect its own interests," or "to preserve customer relations" is not a mere volunteer. *Id.* at *3–4. Applying these principles, the court held that an insurer wasn't acting as a volunteer when it made a payment to avoid a coverage dispute with another insurer. *Id.*

Under the principles articulated in these cases, American Family was not a mere volunteer when it made payments on Spear's behalf. It's undisputed that American Family received multiple demands for payment from Bryanna Cook and Erica Dixon's lawyers. Dkt. 22 (Plt.'s PFOF ¶¶ 6–10). It's also undisputed that USPS didn't respond to multiple letters that American Family sent USPS over the course of six months, asking whether USPS would cover the accident. *Id.* (Plt.'s PFOF ¶ 5). Under these circumstances, it was in American Family's own interest to settle the dispute, both to avoid potential litigation and to preserve a good relationship with its insured. This was not an act of altruism.

The government says that USPS verbally informed American Family that "[b]ased on the surface information, if a claim was presented to them for CLMT damages, they would accept liability." *Id.* (Dft.'s PFOF ¶ 18). American Family says that USPS was more equivocal, referring to "potential coverage," but only if American Family denied coverage first. *Id*. Regardless which party is correct, the court isn't persuaded that American Family was acting as a volunteer. It simply decided to resolve the dispute rather than wait for the government, which refused to confirm coverage in writing.

The government questions the precedential value of *State Auto Insurance Companies*, observing that the court "did not examine Wisconsin's voluntary payment doctrine in any detail" and relied on cases from other jurisdictions. Dkt. 21, at 3. The government instead asks the court to follow *Land Title Servs., Inc. v. Kemnitz*, a case in which the court applied the

voluntary payment exception to a party that did not have "an inchoate or potential obligation to pay." No. 02–1257, 2002 WL 31247092, at *2 (Wis. Ct. App. Oct. 8, 2002). But *Land Title Services* is a nonprecedential opinion. And because it was issued before 2009, it cannot be cited as "precedent or authority, except to support a claim of claim preclusion, issue preclusion, or the law of the case." Wis. Stat. § 809.23(3). So the government was wrong to make it a centerpiece of its argument. In any event, the court in *Land Title Services* did not issue a broad holding that a party is not entitled to subrogation in the absence of a legal obligation to pay. Rather, the court stated that the plaintiff had not cited any authority to support its position that "business reasons" or a "sense of fairness" triggered subrogation rights. *See Land Title Services*, 2002 WL 31247092, at *2. The government cites no other Wisconsin cases that support its position, so the court will follow the approach of *State Auto Insurance Companies*.

The government also says that American Family should have made any payments under a reservation of rights. But the government doesn't explain why that would have made any difference; if American Family had done that, the parties would be in the same position they are now. Perhaps reserving its rights would have communicated that American Family questioned coverage, but that isn't the test. The court concludes that American Family wasn't a mere volunteer because of the pressure and uncertainty it faced, not because it made the correct legal determination about coverage.

The doctrine of equitable subrogation rests upon the theory of unjust enrichment. *D'Angelo v. Cornell Paperboard Products Co.*, 19 Wis. 2d 390, 399–400, 120 N.W.2d 70 (1963). By its own assertion, the government is the party that should have been responsible for covering the losses at issue in this case. And it doesn't contend that it is prejudiced in any way by American Family's decision to settle with Cook and Dixon. Under these circumstances, the

court sees no public policy that would be served by granting the government's motion for summary judgment. Rather, doing so would simply punish American Family for attempting to resolve a dispute quickly and amicably, encourage insurers to be obstreperous, and give the government a windfall. The court declines to take that approach and will deny the government's motion for summary judgment.

American Family didn't file its own motion for summary judgment, but it's not clear whether any other issues are in dispute. So the court will give the parties two weeks to identify any issues that remain for trial.

ORDER

IT IS ORDERED that the United States of America's motion for summary judgment, Dkt. 15, is DENIED. The parties may have until April 28, 2021, to identify any issues that remain for trial.

Entered April 13, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge